(Slip Opinion) OCTOBER TERM, 2013 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ATLANTIC MARINE CONSTRUCTION CO., INC. *v.* UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 12–929.  Argued October 9, 2013—Decided December 3, 2013

Petitioner Atlantic Marine Construction Co., a Virginia corporation, entered into a subcontract with respondent J-Crew Management, Inc., a Texas corporation, for work on a construction project. The subcontract included a forum-selection clause, which stated that all disputes between the parties would be litigated in Virginia. When a dispute arose, however, J-Crew filed suit in the Western District of Texas. Atlantic Marine moved to dismiss, arguing that the forum-selection clause rendered venue "wrong" under 28 U. S. C. §1406(a) and "improper" under Federal Rule of Civil Procedure 12(b)(3). In the alternative, Atlantic Marine moved to transfer the case to the Eastern District of Virginia under 28 U. S. C. §1404(a). The District Court denied both motions. It concluded that §1404(a) is the exclusive mechanism for enforcing a forum-selection clause that points to another federal forum; that Atlantic Marine bore the burden of establishing that a transfer would be appropriate under §1404(a); and that the court would consider both public- and private-interest factors, only one of which was the forum-selection clause. After weighing those factors, the court held that Atlantic Marine had not carried its burden.

The Fifth Circuit denied Atlantic Marine's petition for a writ of mandamus directing the District Court to dismiss the case under §1406(a) or to transfer it to the Eastern District of Virginia under §1404(a). The court agreed with the District Court that §1404(a) is the exclusive mechanism for enforcing a forum-selection clause that points to another federal forum; that dismissal under Rule 12(b)(3) would be the correct mechanism for enforcing a forum-selection clause that pointed to a nonfederal forum; and that the District Court

had not abused its discretion in refusing to transfer the case after conducting the balance-of-interests analysis required by §1404(a).

*Held*:

1. A forum-selection clause may be enforced by a motion to transfer under §1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Pp. 4–11.

(a) Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is "wrong" or "improper." Whether venue is "wrong" or "improper" depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws. Title 28 U. S. C. §1391, which governs venue generally, states that "[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in" federal district courts. §1391(a)(1). It then defines districts in which venue is proper. See §1391(b). If a case falls within one of §1391(b)'s districts, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under §1406(a). Whether the parties' contract contains a forum-selection clause has no bearing on whether a case falls into one of the specified districts.

This conclusion is confirmed by the structure of the federal venue provisions, which reflects Congress' intent that venue should always lie in *some* federal court whenever federal courts have personal jurisdiction over the defendant. See §1391(b)(3). The conclusion also follows from this Court's decisions construing the federal venue statutes. See *Van Dusen* v. *Barrack*, 376 U. S. 612; *Stewart Organization, Inc.* v. *Ricoh Corp.*, 487 U. S. 22. Pp. 4–8.

(b) Although a forum-selection clause does not render venue in a court "wrong" or "improper" under §1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under §1404(a), which permits transfer to any other district where venue is proper or to any district to which the parties have agreed by contract or stipulation. Section 1404(a), however, governs transfer only within the federal court system. When a forum-selection clause points to a state or foreign forum, the clause may be enforced through the doctrine of *forum non conveniens.* Section 1404(a) is a codification of that doctrine for the subset of cases in which the transferee forum is another federal court. *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U. S. 422. For all other cases, parties may still invoke the residual *forum non conveniens* doctrine. See *id.,* at 430. Pp. 8–10.

(c) The Court declines to consider whether a defendant in a breach-of-contract action could obtain dismissal under Rule 12(b)(6) if

Syllabus

the plaintiff files suit in a district other than the one specified in a forum-selection clause. Petitioner did not file a motion to dismiss under Rule 12(b)(6), and the parties did not brief the Rule's application. Pp. 10–11.

2. When a defendant files a §1404(a) motion, a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer. No such exceptional factors appear to be present in this case. Pp. 11–17.

(a) Normally, a district court considering a §1404(a) motion must evaluate both the private interests of the parties and public-interest considerations. But when the parties' contract contains a valid forum-selection clause, that clause "represents [their] agreement as to the most proper forum," *Stewart*, 487 U. S., at 31, and should be "given controlling weight in all but the most exceptional cases," *id.,* at 33 (KENNEDY, J., concurring). The presence of a valid forum-selection clause requires district courts to adjust their usual §1404(a) analysis in three ways. First, the plaintiff's choice of forum merits no weight, and the plaintiff, as the party defying the forum-selection clause, has the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. Second, the court should not consider the parties' private interests aside from those embodied in the forum-selection clause; it may consider only public interests. Because public-interest factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules. See *Van Dusen*, *supra,* at 639. Pp. 12–16.

(b) Here, the District Court's application of §1404(a) did not comport with these principles. The court improperly placed the burden on Atlantic Marine to prove that transfer to the parties' contractually preselected forum was appropriate instead of requiring J-Crew, the party acting in violation of the forum-selection clause, to show that public-interest factors overwhelmingly disfavored a transfer. It also erred in giving weight to the parties' private interests outside those expressed in the forum-selection clause. And its holding that public interests favored keeping the case in Texas because Texas contract law is more familiar to federal judges in Texas than to those in Virginia rested in part on the District Court's mistaken belief that the Virginia federal court would have been required to apply Texas' choice-of-law rules instead of Virginia's. Pp. 16–17.

701 F. 3d 736, reversed and remanded.

ALITO, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 12–929
_____

## ATLANTIC MARINE CONSTRUCTION COMPANY, INC., PETITIONER *v.* UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[December 3, 2013]

JUSTICE ALITO delivered the opinion of the Court.

The question in this case concerns the procedure that is available for a defendant in a civil case who seeks to enforce a forum-selection clause. We reject petitioner's argument that such a clause may be enforced by a motion to dismiss under 28 U. S. C. §1406(a) or Rule 12(b)(3) of the Federal Rules of Civil Procedure. Instead, a forum-selection clause may be enforced by a motion to transfer under §1404(a) (2006 ed., Supp. V), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." When a defendant files such a motion, we conclude, a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer. In the present case, both the District Court and the Court of Appeals misunderstood the standards to be applied in adjudicating a §1404(a) motion in a case involving a forum-

2    ATLANTIC MARINE CONSTR. CO. *v.* UNITED STATES DIST.
COURT FOR WESTERN DIST. OF TEX.

Opinion of the Court

selection clause, and we therefore reverse the decision below.

I

Petitioner Atlantic Marine Construction Co., a Virginia corporation with its principal place of business in Virginia, entered into a contract with the United States Army Corps of Engineers to construct a child-development center at Fort Hood in the Western District of Texas. Atlantic Marine then entered into a subcontract with respondent J-Crew Management, Inc., a Texas corporation, for work on the project. This subcontract included a forum-selection clause, which stated that all disputes between the parties "'shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division.'" *In re Atlantic Marine Constr. Co.,* 701 F. 3d 736, 737–738 (CA5 2012).

When a dispute about payment under the subcontract arose, however, J-Crew sued Atlantic Marine in the Western District of Texas, invoking that court's diversity jurisdiction. Atlantic Marine moved to dismiss the suit, arguing that the forum-selection clause rendered venue in the Western District of Texas "wrong" under §1406(a) and "improper" under Federal Rule of Civil Procedure 12(b)(3). In the alternative, Atlantic Marine moved to transfer the case to the Eastern District of Virginia under §1404(a). J-Crew opposed these motions.

The District Court denied both motions. It first concluded that §1404(a) is the exclusive mechanism for enforcing a forum-selection clause that points to another federal forum. The District Court then held that Atlantic Marine bore the burden of establishing that a transfer would be appropriate under §1404(a) and that the court would "consider a nonexhaustive and nonexclusive list of public and private interest factors," of which the "forum-

selection clause [was] only one such factor." *United States ex rel. J-Crew Management, Inc.* v. *Atlantic Marine Constr. Co.,* 2012 WL 8499879, *5 (WD Tex., Apr. 6, 2012). Giving particular weight to its findings that "compulsory process will not be available for the majority of J-Crew's witnesses" and that there would be "significant expense for those willing witnesses," the District Court held that Atlantic Marine had failed to carry its burden of showing that transfer "would be in the interest of justice or increase the convenience to the parties and their witnesses." *Id.*, at *7–*8; see also 701 F. 3d, at 743.

Atlantic Marine petitioned the Court of Appeals for a writ of mandamus directing the District Court to dismiss the case under §1406(a) or to transfer the case to the Eastern District of Virginia under §1404(a). The Court of Appeals denied Atlantic Marine's petition because Atlantic Marine had not established a "'clear and indisputable'" right to relief. *Id.*, at 738; see *Cheney* v. *United States Dist. Court for D. C.*, 542 U. S. 367, 381 (2004) (mandamus "petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable" (internal quotation marks omitted; brackets in original)). Relying on *Stewart Organization, Inc.* v. *Ricoh Corp.*, 487 U. S. 22 (1988), the Court of Appeals agreed with the District Court that §1404(a) is the exclusive mechanism for enforcing a forum-selection clause that points to another federal forum when venue is otherwise proper in the district where the case was brought. See 701 F. 3d, at 739–741.[1] The court stated, however, that if a forum-selection clause points to a nonfederal forum, dismissal under Rule 12(b)(3) would be the correct mechanism to

—————

[1] Venue was otherwise proper in the Western District of Texas because the subcontract at issue in the suit was entered into and was to be performed in that district. See *United States ex rel. J-Crew Management, Inc.* v. *Atlantic Marine Constr. Co.*, 2012 WL 8499879, *5 (WD Tex., Apr. 6, 2012) (citing 28 U. S. C. §1391(b)(2)).

enforce the clause because §1404(a) by its terms does not permit transfer to any tribunal other than another federal court. *Id.*, at 740. The Court of Appeals then concluded that the District Court had not clearly abused its discretion in refusing to transfer the case after conducting the balance-of-interests analysis required by §1404(a). *Id.,* at 741–743; see *Cheney*, *supra*, at 380 (permitting mandamus relief to correct "a clear abuse of discretion" (internal quotation marks omitted)). That was so even though there was no dispute that the forum-selection clause was valid. See 701 F. 3d, at 742; *id.*, at 744 (concurring opinion). We granted certiorari. 569 U. S. ___ (2013).

## II

Atlantic Marine contends that a party may enforce a forum-selection clause by seeking dismissal of the suit under §1406(a) and Rule 12(b)(3). We disagree. Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is "wrong" or "improper." Whether venue is "wrong" or "improper" depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause.

## A

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue." These provisions therefore authorize dismissal only when venue is "wrong" or "improper" in the forum in which it was brought.

This question—whether venue is "wrong" or "improper"—is

generally governed by 28 U. S. C. §1391 (2006 ed., Supp. V).[2] That provision states that "[e]xcept as otherwise provided by *law* . . . this section *shall* govern the venue of *all civil actions* brought in district courts of the United States." §1391(a)(1) (emphasis added). It further provides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." §1391(b).[3]   When venue is challenged, the court must determine whether the case falls within one of the three categories set out in §1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under §1406(a). Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in §1391(b). As a result, a case filed in a district that falls within §1391 may not be dismissed under §1406(a) or Rule 12(b)(3).

Petitioner's contrary view improperly conflates the special statutory term "venue" and the word "forum." It is certainly true that, in some contexts, the word "venue" is used synonymously with the term "forum," but §1391 makes clear that venue in "all civil actions" must be determined in accordance with the criteria outlined in that

―――――――
[2] Section 1391 governs "venue generally," that is, in cases where a more specific venue provision does not apply. Cf., *e.g.*, §1400 (identifying proper venue for copyright and patent suits).

[3] Other provisions of §1391 define the requirements for proper venue in particular circumstances.

section.  That language cannot reasonably be read to allow judicial consideration of other, extrastatutory limitations on the forum in which a case may be brought.

The structure of the federal venue provisions confirms that they alone define whether venue exists in a given forum.  In particular, the venue statutes reflect Congress' intent that venue should always lie in *some* federal court whenever federal courts have personal jurisdiction over the defendant.  The first two paragraphs of §1391(b) define the preferred judicial districts for venue in a typical case, but the third paragraph provides a fallback option: If no other venue is proper, then venue will lie in "*any judicial district* in which any defendant is subject to the court's personal jurisdiction" (emphasis added).  The statute thereby ensures that so long as a federal court has personal jurisdiction over the defendant, venue will always lie somewhere.  As we have previously noted, "Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other."  *Smith* v. *United States*, 507 U. S. 197, 203 (1993) (internal quotation marks omitted).  Yet petitioner's approach would mean that in some number of cases—those in which the forum-selection clause points to a state or foreign court— venue would not lie in any federal district.  That would not comport with the statute's design, which contemplates that venue will always exist in some federal court.

The conclusion that venue is proper so long as the requirements of §1391(b) are met, irrespective of any forum-selection clause, also follows from our prior decisions construing the federal venue statutes.  In *Van Dusen* v. *Barrack*, 376 U. S. 612 (1964), we considered the meaning of §1404(a), which authorizes a district court to "transfer any civil action to any other district or division where it might have been brought."  The question in *Van Dusen* was whether §1404(a) allows transfer to a district in which

venue is proper under §1391 but in which the case could not have been pursued in light of substantive state-law limitations on the suit. See *id.*, at 614–615. In holding that transfer is permissible in that context, we construed the phrase "where it might have been brought" to refer to "the federal laws delimiting the districts in which such an action 'may be brought,'" *id.*, at 624, noting that "the phrase 'may be brought' recurs at least 10 times" in §§1391–1406, *id.*, at 622. We perceived "no valid reason for reading the words 'where it might have been brought' to narrow the range of permissible federal forums beyond those permitted by federal venue statutes." *Id.*, at 623.

As we noted in *Van Dusen*, §1406(a) "shares the same statutory context" as §1404(a) and "contain[s] a similar phrase." *Id.*, at 621, n. 11. It instructs a court to transfer a case from the "wrong" district to a district "in which it could have been brought." The most reasonable interpretation of that provision is that a district cannot be "wrong" if it is one in which the case could have been brought under §1391. Under the construction of the venue laws we adopted in *Van Dusen*, a "wrong" district is therefore a district other than "those districts in which Congress has provided *by its venue statutes* that the action 'may be brought.'" *Id.*, at 618 (emphasis added). If the federal venue statutes establish that suit may be brought in a particular district, a contractual bar cannot render venue in that district "wrong."

Our holding also finds support in *Stewart,* 487 U. S. 22. As here, the parties in *Stewart* had included a forum-selection clause in the relevant contract, but the plaintiff filed suit in a different federal district. The defendant had initially moved to transfer the case or, in the alternative, to dismiss for improper venue under §1406(a), but by the time the case reached this Court, the defendant had abandoned its §1406(a) argument and sought only transfer under §1404(a). We rejected the plaintiff's argument that

state law governs a motion to transfer venue pursuant to a forum-selection clause, concluding instead that "federal law, specifically 28 U. S. C. §1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause." *Id.*, at 32. We went on to explain that a "motion to transfer under §1404(a) . . . calls on the district court to weigh in the balance a number of case-specific factors" and that the "presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Id.*, at 29.

The question whether venue in the original court was "wrong" under §1406(a) was not before the Court, but we wrote in a footnote that "[t]he parties do not dispute that the District Court properly denied the motion to dismiss the case for improper venue under 28 U. S. C. §1406(a) because respondent apparently does business in the Northern District of Alabama. See 28 U. S. C. §1391(c) (venue proper in judicial district in which corporation is doing business)." *Id.*, at 28, n. 8. In other words, because §1391 made venue proper, venue could not be "wrong" for purposes of §1406(a). Though *dictum*, the Court's observation supports the holding we reach today. A contrary view would all but drain *Stewart* of any significance. If a forum-selection clause rendered venue in all other federal courts "wrong," a defendant could always obtain automatic dismissal or transfer under §1406(a) and would not have any reason to resort to §1404(a). *Stewart*'s holding would be limited to the presumably rare case in which the defendant inexplicably fails to file a motion under §1406(a) or Rule 12(b)(3).

B

Although a forum-selection clause does not render venue in a court "wrong" or "improper" within the meaning of §1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under §1404(a). That provi-

sion states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."　Unlike §1406(a), §1404(a) does not condition transfer on the initial forum's being "wrong."　And it permits transfer to any district where venue is also proper (*i.e.*, "where [the case] might have been brought") or to any other district to which the parties have agreed by contract or stipulation.

Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district.　And for the reasons we address in Part III, *infra*, a proper application of §1404(a) requires that a forum-selection clause be "given controlling weight in all but the most exceptional cases."　*Stewart*, *supra*, at 33 (KENNEDY, J., concurring).

Atlantic Marine argues that §1404(a) is not a suitable mechanism to enforce forum-selection clauses because that provision cannot provide for transfer when a forum-selection clause specifies a state or foreign tribunal, see Brief for Petitioner 18–19, and we agree with Atlantic Marine that the Court of Appeals failed to provide a sound answer to this problem.　The Court of Appeals opined that a forum-selection clause pointing to a nonfederal forum should be enforced through Rule 12(b)(3), which permits a party to move for dismissal of a case based on "improper venue."　701 F. 3d, at 740.　As Atlantic Marine persuasively argues, however, that conclusion cannot be reconciled with our construction of the term "improper venue" in §1406 to refer only to a forum that does not satisfy federal venue laws.　If venue is proper under federal venue rules, it does not matter for the purpose of Rule 12(b)(3) whether the forum-selection clause points to a federal or a nonfederal forum.

Instead, the appropriate way to enforce a forum-

selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.* Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer. See *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U. S. 422, 430 (2007) ("For the federal court system, Congress has codified the doctrine . . . "); see also notes following §1404 (Historical and Revision Notes) (Section 1404(a) "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper"). For the remaining set of cases calling for a nonfederal forum, §1404(a) has no application, but the residual doctrine of *forum non conveniens* "has continuing application in federal courts." *Sinochem*, 549 U. S., at 430 (internal quotation marks and brackets omitted); see also *ibid.* (noting that federal courts invoke *forum non conveniens* "in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best" (internal quotation marks and citation omitted)). And because both §1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum. See *Stewart*, 487 U. S., at 37 (SCALIA, J., dissenting) (Section 1404(a) "did not change 'the relevant factors' which federal courts used to consider under the doctrine of *forum non conveniens*" (quoting *Norwood* v. *Kirkpatrick*, 349 U. S. 29, 32 (1955))).

C

An *amicus* before the Court argues that a defendant in a

breach-of-contract action should be able to obtain dismissal under Rule 12(b)(6) if the plaintiff files suit in a district other than the one specified in a valid forum-selection clause. See Brief for Stephen E. Sachs as *Amicus Curiae*. Petitioner, however, did not file a motion under Rule 12(b)(6), and the parties did not brief the Rule's application to this case at any stage of this litigation. We therefore will not consider it. Even if a defendant could use Rule 12(b)(6) to enforce a forum-selection clause, that would not change our conclusions that §1406(a) and Rule 12(b)(3) are not proper mechanisms to enforce a forum-selection clause and that §1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms.[4]

## III

Although the Court of Appeals correctly identified §1404(a) as the appropriate provision to enforce the forum-selection clause in this case, the Court of Appeals erred in failing to make the adjustments required in a §1404(a) analysis when the transfer motion is premised on a forum-selection clause. When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.[5] Only under extraordinary circumstances unrelated to the convenience of the parties should a §1404(a) motion be denied. And no such exceptional factors appear to be present in this case.

———————

[4] We observe, moreover, that a motion under Rule 12(b)(6), unlike a motion under §1404(a) or the *forum non conveniens* doctrine, may lead to a jury trial on venue if issues of material fact relating to the validity of the forum-selection clause arise. Even if Professor Sachs is ultimately correct, therefore, defendants would have sensible reasons to invoke §1404(a) or the *forum non conveniens* doctrine in addition to Rule 12(b)(6).

[5] Our analysis presupposes a contractually valid forum-selection clause.

A

In the typical case not involving a forum-selection clause, a district court considering a §1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations.[6]  Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." §1404(a).

The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum."  *Stewart*, 487 U. S., at 31.  The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Id.*, at 33 (KENNEDY, J., concurring).  For that reason, and because the overarching consideration under §1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."  *Id.*, at 33 (same).  The presence of a valid forum-selection clause requires district courts to adjust their usual §1404(a) analysis in three ways.

_____

[6] Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Piper Aircraft Co.* v. *Reyno*, 454 U. S. 235, 241, n. 6 (1981) (internal quotation marks omitted).  Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  *Ibid.* (internal quotation marks omitted).  The Court must also give some weight to the plaintiffs' choice of forum.  See *Norwood* v. *Kirkpatrick,* 349 U. S. 29, 32 (1995).

First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the "plaintiff's venue privilege." *Van Dusen*, 376 U. S., at 635.[7] But when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its "venue privilege" before a dispute arises. Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.

Second, a court evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. As we have explained in a different but "'instructive'" context, *Stewart*, *supra*, at 28, "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." *The Bremen* v. *Zapata Off-Shore Co.*, 407 U. S. 1, 17–18 (1972); see also *Stewart*,

—————————

[7] We note that this "privilege" exists within the confines of statutory limitations, and "[i]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy* v. *Great Western United Corp.*, 443 U. S. 173, 183–184 (1979).

*supra*, at 33 (KENNEDY, J., concurring) (stating that *Bremen*'s "reasoning applies with much force to federal courts sitting in diversity").

As a consequence, a district court may consider arguments about public-interest factors only. See n. 6, *supra.* Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," *Stewart, supra*, at 30–31, such cases will not be common.

Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations. See *Piper Aircraft Co.* v. *Reyno,* 454 U. S. 235, 241, n. 6 (1981) (listing a court's familiarity with the "law that must govern the action" as a potential factor). A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits. See *Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U. S. 487, 494–496 (1941). However, we previously identified an exception to that principle for §1404(a) transfers, requiring that the state law applicable in the original court also apply in the transferee court. See *Van Dusen*, 376 U. S., at 639. We deemed that exception necessary to prevent "defendants, properly subjected to suit in the transferor State," from "invok[ing] §1404(a) to gain the benefits of the laws of another jurisdiction . . . ." *Id.*, at 638; see *Ferens* v. *John Deere Co.*, 494 U. S. 516, 522 (1990) (extending the *Van Dusen* rule to §1404(a) motions by plaintiffs).

The policies motivating our exception to the *Klaxon* rule for §1404(a) transfers, however, do not support an extension to cases where a defendant's motion is premised on

enforcement of a valid forum-selection clause. See *Ferens, supra*, at 523. To the contrary, those considerations lead us to reject the rule that the law of the court in which the plaintiff inappropriately filed suit should follow the case to the forum contractually selected by the parties. In *Van Dusen*, we were concerned that, through a §1404(a) transfer, a defendant could "defeat the state-law advantages that might accrue from the exercise of [the plaintiff's] venue privilege." 376 U. S., at 635. But as discussed above, a plaintiff who files suit in violation of a forum-selection clause enjoys no such "privilege" with respect to its choice of forum, and therefore it is entitled to no concomitant "state-law advantages." Not only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship. Because "§1404(a) should not create or multiply opportunities for forum shopping," *Ferens, supra*, at 523, we will not apply the *Van Dusen* rule when a transfer stems from enforcement of a forum-selection clause: The court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right.[8]

_____

[8] For the reasons detailed above, see Part II–B, *supra*, the same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to state or foreign forums. We have noted in contexts unrelated to forum-selection clauses that a defendant "invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Co.*, 549 U. S. 422, 430 (2007). That is because of the "hars[h] result" of that doctrine: Unlike a §1404(a) motion, a successful motion under *forum non conveniens* requires dismissal of the case. *Norwood*, 349 U. S., at 32. That inconveniences plaintiffs in several respects and even "makes it possible for [plaintiffs] to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." *Id.*, at 31 (internal quotation marks omitted). Such caution is not warranted, however, when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection

When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

B

The District Court's application of §1404(a) in this case did not comport with these principles. The District Court improperly placed the burden on Atlantic Marine to prove that transfer to the parties' contractually preselected forum was appropriate. As the party acting in violation of the forum-selection clause, J-Crew must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer.

The District Court also erred in giving weight to arguments about the parties' private interests, given that all private interests, as expressed in the forum-selection clause, weigh in favor of the transfer. The District Court stated that the private-interest factors "militat[e] against a transfer to Virginia" because "compulsory process will not be available for the majority of J-Crew's witnesses" and there will be "significant expense for those willing witnesses." 2012 WL 8499879, *6–*7; see 701 F. 3d, at 743 (noting District Court's "concer[n] with J-Crew's ability to secure witnesses for trial"). But when J-Crew entered into a contract to litigate all disputes in Virginia, it knew that a distant forum might hinder its ability to call certain witnesses and might impose other burdens on

clause. In such a case, dismissal would work no injustice on the plaintiff.

its litigation efforts. It nevertheless promised to resolve its disputes in Virginia, and the District Court should not have given any weight to J-Crew's current claims of inconvenience.

The District Court also held that the public-interest factors weighed in favor of keeping the case in Texas because Texas contract law is more familiar to federal judges in Texas than to their federal colleagues in Virginia. That ruling, however, rested in part on the District Court's belief that the federal court sitting in Virginia would have been required to apply Texas' choice-of-law rules, which in this case pointed to Texas contract law. See 2012 WL 8499879, *8 (citing *Van Dusen, supra*, at 639). But for the reasons we have explained, the transferee court would apply Virginia choice-of-law rules. It is true that even these Virginia rules may point to the contract law of Texas, as the State in which the contract was formed. But at minimum, the fact that the Virginia court will not be required to apply Texas choice-of-law rules reduces whatever weight the District Court might have given to the public-interest factor that looks to the familiarity of the transferee court with the applicable law. And, in any event, federal judges routinely apply the law of a State other than the State in which they sit. We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia.

*    *    *

We reverse the judgment of the Court of Appeals for the Fifth Circuit. Although no public-interest factors that might support the denial of Atlantic Marine's motion to transfer are apparent on the record before us, we remand the case for the courts below to decide that question.

*It is so ordered.*